IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | Case No.:  1:23-cr-00049-JMC |
| ) | |
| KALEB DILLARD, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORADUM**

COMES NOW the defendant, Kaleb Dillard, by and through his attorney of record, Randy A. Dempsey, and for the recommendation of sentencing says the following:

**FACTS**

Kaleb Dillard attended the rally in Washington D.C. on January 6th, 2021, along with a friend and a cousin.  He went there reluctantly because he did not believe that the election was in fact stolen.  He did not have to pay for lodging overnight after driving up on January 5, because he spent the night of January 5th with the friend who lives a short distance away.  The trip to D.C. was an opportunity to see friends that he had made living near the District of Columbia while he was in the United States Marine Corps.

1

When they left his friend's home on the morning of the 6th they exited the Metro, and he was shocked at the number of people that were there. Everyone appeared pleasant, peaceful, and quiet and there was no talk about going into the Capitol by anyone that he overheard. Later, he became alarmed by the situation because during the rally there were countless statements like, "It's now or never" and "Today is the day". He remembers being shocked by the statements of Mo Brooks, a congressman from Alabama, and virtually every speaker at the rally encouraged the crowd to leave and walk to the Capitol to "make your voices be heard". Afterwards, many people began walking toward the Capitol.

As it was lunchtime, Mr. Dillard and his companions became hungry and decided to get a pizza. They walked to a restaurant a few blocks north of the Capitol called "Fuel Pizza and Wings". After they sat down and had eaten, they left and walked back to the East Side of the Capitol. Mr. Dillard never crossed any barriers and never pushed any police officers in the exterior of the building. As he walked, he was talking with other people and he ended up at the front of the line, although a good distance from the entrance of the building. Mr. Dillard had a great talk with an officer directly in front of him, who told Mr. Dillard that he, the officer, had a sister that

lived near Mr. Dillard in Hoover, Alabama.  Mr. Dillard responded that his, Mr. Dillard's, older sister lived there also.

There was a man next to him that had some kind of a metal stick with which the man began to strike the window on one of the Rotunda doors.  A couple of places in the window cracked but the man never broke through the window.  After a while, the man looked at Mr. Dillard and asked if he would try a few swings. The man said, "I'm tiring out."  After striking it a few times, Mr. Dillard believed there was no way he would ever get through it.  "It was like hitting a rock," Mr. Dillard told the man.  Mr. Dillard then turned and handed the metal rod back to the man and told him, "you're never going to get through that."  This window was never broken out.

Then, at some point, something which sounded like gunfire went off very close to him and a kind of chemical gas filled the area outside the doorway.  He realized that his face and neck began to burn and people around him began to panic.  The crowd behind him started pushing toward the building.  He pulled down his cap, a beanie hat, over his eyes and face to try to shield himself from the chemical gas.

After a brief time, Mr. Dillard was not getting any relief from the chemical gas and the pain and he tried to turn around and fight his way back through the crowd from where he had come.  As his back was turned, the

Rotunda door was opened from the inside, and he could barely see what was going on, but he was pushed by a group of people through the door. He entered the Capitol with his arms up and his sight obscured.

Once he got inside, he pulled off his beanie because he immediately felt relief. As he turned around and looked, he saw an officer keeping more people from entering. He believed the people outside just wanted to get out of that chemical gas that was burning and irritating them. His intention was to pull the officer out of the doorway, not hurt him, or throw him to the floor. Unfortunately, the officer was a rather large man, and he was holding on to the door. So, when Mr. Dillard pulled the officer away from the door, their momentum took them toward the floor. Mr. Dillard caught himself, but the officer went all the way to the floor. When Mr. Dillard regained his balance, Mr. Dillard told the officer that he, Mr. Dillard, was sorry and extended his hand towards the officer. The officer said, "don't touch me." So, Mr. Dillard raised his hands and walked away. He did nothing else to the officer and had no intent to hurt the officer. The officer later said that he experienced some haziness at this point but, after a few minutes, he was able to continue performing his job with no medical attention required.

After that, Mr. Dillard noticed that other officers had closed the Rotunda door. Mr. Dillard talked to a couple of officers and told them that

those outside just wanted to get out of the gas and one of the officers responded, "we're just doing our job."

Mr. Dillard wanted to leave the building, but he could not go back out the door that he had just entered. It had been closed. He asked dozens of people, "what are you doing here?" "How do I get out of here?" Everyone said the same thing, "I don't know." He did not want to venture too far into the building and risk getting lost. He eventually turned and headed back towards the East Rotunda door and ran into his cousin. Mr. Dillard asked his cousin how he had gotten in and his cousin said "the door you came in is open now". Mr. Dillard told him "We need to leave", and they exited the building.

## SENTENCING

The defendant agrees, pursuant to the Plea Agreement, that the guideline range of 12 to 18 months is the appropriate guideline range for his case. However, the sentencing commission and the Congress appear to have created a new guideline at USSG §4C1.1 which will provide a 2-level decrease for "zero point offenders" who meet certain criteria. The United States Probation Officer, Angelica Deniz, believes Mr. Dillard qualifies for this decrease. Should the Court determine that Mr. Dillard meets the

criteria, we would submit that his guideline prison range should be reduced to 8 to 14 months, which is Zone B of the sentencing table.

The defendant further requests a variance due to his 5 years of service in the United States Marine Corp and for a downward departure per USSG §5H1.11.  Also, since Mr. Dillard has no criminal history and has never served a period of incarceration or community supervision, he would ask the Court to consider the need for incremental punishment as a basis for a variance, also recommended by the United States Probation Office.  Additionally, Mr. Dillard would ask the Court to consider this variance in concert with the language of USSG §5K2.20, which discusses aberrant behavior.  These, when coupled, would result in greater consideration in favor of a downward variance.

In light of the above, the defendant would request a sentence of probation with no custodial time.  Specifically, the defendant would request three years probation to allow him time to pay the restitution to which he agreed as set forth in the plea agreement.  That is, two specific amounts of restitution with the first being $2,000.00 to the Architect of the Capitol.  He further has agreed to pay $34,238.55 for damage to the East Rotunda door.  The Defendant requests that this second restitution amount be ordered

jointly and severally with any other defendants who have been ordered to pay restitution because of this damage.

The Capitol police officer, B.A., that Mr. Dillard has pled guilty to assaulting, did not seek any medical treatment and the defendant has received no restitution request from the government regarding any medical expenses or prescription drug expenses that B.A. incurred.  As a result of this, the fact that the officer had a brief period of haziness is all the bodily injury that was suffered as a result of his interaction with Mr. Dillard.  Consequently, the defendant is not aware of any restitution requested for officer B.A.

## 18 U.S.C. §3553(a)

The sentencing factors at 18 U.S.C. §3553(a) would be achieved with this recommended sentence.  Pursuant to 18 U.S.C. §3553(a), Mr. Dillard should be sentenced to a term of probation, with any conditions imposed by this Court.

Specifically, the nature and circumstances of the offense wherein Mr. Dillard was unarmed, and did not intentionally cause injury to anyone, supports a non-custodial sentence.

Each case, out of the hundreds of cases brought forward from the events of January 6, 2021, is different.  The facts of Mr. Dillard's case are

unique to him.  He is a man who has never been charged or convicted of any criminal acts, including traffic tickets.  He served his country as a Marine and stood ready to die for his country, if necessary.  He was not attempting to overthrow the government or destroy democracy.

That leads to the history and characteristics of the defendant.  He has zero criminal history and an extensive history of volunteering to help others.  He possesses many positive qualities, such as courage, integrity, and honesty, as his history demonstrates.  He is now a college graduate, married, and employed.  He has a tremendous support group of family and friends.

The need for the sentence to afford adequate deterrence will be satisfied by the recommended sentence of the defendant.  He has no history of criminal acts and no intention to commit any future crimes.

If the Court determines a period of probation alone is not sufficient to satisfy the sentencing factors at Title 18 §3553(a), USSG §5B.1 allows for a "condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c)(3) of §5C1.1.

## CONCLUSION

As set forth hereinabove, the defendant recommends that this Court grant the variance sought based on the various reasons and guidelines sections and sentence him to a period of three years probation, with any imposed conditions deemed appropriate, restitution of $36,238.55, and a special assessment fee of $100.00.

Respectfully Submitted,

/S/ RANDY A. DEMPSEY
RANDY A. DEMPSEY
Attorney for defendant, Kaleb Dillard

**OF COUNSEL**:
DEMPSEY, STEED, STEWART, RITCHEY & GACHÉ, LLP
Attorneys at Law
Civic Center Professional Building
1122 - 22nd Street North
Birmingham, AL 35234-2725
Telephone: (205) 328-0162

## CERTIFICATE OF SERVICE

    I hereby certify that on the 2nd day of November 2023, I electronically filed the foregoing with the clerk of the court which will send notification of such filing to all parties of record.

                                      /S/ RANDY A. DEMPSEY
                                      RANDY A. DEMPSEY
                                      Attorney at Law